Health Services Planning and Review Board
Nos. 92-253
      92-591
      92-592

APPEAL OF NASHUA BROOKSIDE HOSPITAL *& a.*

(New Hampshire Health Services Planning and Review Board)

December 23, 1993

*Sulloway & Hollis*, of Concord (*Eleanor H. MacLellan* and *Douglas D. Byrd* on the brief, and *Ms. MacLellan* orally), for the petitioner Nashua Brookside Hospital, jointly with *Sheehan, Phinney, Bass & Green*, of Manchester (*William J. Donovan* on the brief), for the petitioner Cheshire Medical Center.

*Gallagher, Callahan & Gartrell, P.A.*, of Concord (*Daniel E. Lyford* and *David A. Garfunkel* on the brief, and *Mr. Garfunkel* orally), for the respondent Beech Hill Hospital, jointly with *Broderick & Dean, P.A.*, of Manchester (*Mark E. Howard* on the brief and orally), for the respondent Mediplex of New Hampshire, Inc. (Spofford Hall).

*Michael C. Shklar*, of Newport, by brief and orally, for the respondent Seminole Point Hospital.

JOHNSON, J.   In this consolidated appeal, the petitioners, Nashua Brookside Hospital and Cheshire Medical Center, appeal the decision of the health services planning and review board (board) granting certificates of need (CONs) to the respondents, Beech Hill Hospital, Mediplex of New Hampshire, Inc. (Spofford Hall), and Seminole Point Hospital, to convert ten inpatient substance abuse beds in each facility to inpatient psychiatric beds. We reverse, holding that the board failed to follow the requirements of RSA chapter 151-C regarding the determination of a need for new health services and the issuance of a request for CON applications (RFA).

In 1991, when the respondents began the CON application process at issue, each facility was a licensed substance abuse treatment center. Until the board granted the CONs, however, the respondents were not licensed to treat psychiatric disorders. As many substance abuse patients have psychiatric disorders, the respondents believed that this restriction sometimes posed a barrier to effective therapy. Hence, one of the respondents requested the board's permission to convert some of its beds to psychiatric use. The board indicated that such conversions would be illegal without a CON specifically allowing them, and then referred to the requirements of New Hampshire Administrative Rule, PART He-Hea 803, which states:

> "PART He-Hea 803 STANDARD FOR DETERMINING THE NUMBER OF ACUTE PSYCHIATRIC INPATIENT BEDS NEED[ED] BY THE STATE
>
> He-Hea 803.01 *Criterion for Additional Beds.*
>
> (a) No application for additional acute psychiatric inpatient beds, whether for new beds or for the conversion of beds in an existing facility, shall be considered by the health services planning and review board unless the applicant has a letter from the division of mental health and developmental services informing the board that these beds are necessary for its mental health system as defined in 'Planning For Progress: Restructuring The Mental Health/Developmental Services System' 1985 which is the plan supported by Chapter 407 of the laws of 1983 which mandates restructuring of the state mental health system.
>
> (b) Any proposals for construction or development of inpatient beds for mental health services that are not covered by 'Planning For Progress: Restructuring The Mental Health/Developmental Services System' shall not be submitted to the health services planning and review board unless the applicant has a letter from the division of mental health and developmental services informing the board that this service is a necessary addition to the state mental health system as outlined in 'Planning For Progress: Restructuring The Mental Health/Developmental Services System.'"

Each of the respondents gave the board a letter from the division of mental health and developmental services (DMHDS) declaring a need for the conversion proposed at that particular facility. None of

the letters, however, specifically states that a conversion is necessary for the State's mental health system, nor do they make any reference to "Planning For Progress." The board nonetheless determined that the letters met the requirements of He-Hea 803.01(a) and told the respondents that they could each submit a CON application to fill the need found by DMHDS. The respondents did so, and the petitioners intervened, arguing that the board violated PART He-Hea 803, as well as the provisions of RSA chapter 151-C. After formally reviewing the respondents' applications, the board granted a CON for a ten-bed conversion at each facility. The petitioners appeal.

█   Our standard of review is governed by RSA 541:13 (1974), *see* RSA 151-C:10 (1990); *Appeal of Psychiatric Institutes of America*, 132 N.H. 177, 181, 564 A.2d 818, 820–21 (1989), which states that the board's decisions "shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." We agree with the petitioners that the board committed errors of law during its review of the respondents' proposals to convert substance abuse beds to psychiatric beds.

██   RSA chapter 151-C governs the certificate of need review of proposed new institutional health services, a process overseen by the board. RSA 151-C:4 (1990) expresses the basic principles of the chapter:

> "I. No new institutional health service shall be offered or developed within the state . . . except pursuant to obtaining a certificate of need for such service.
>
> II. No certificate of need shall be granted by the board unless a standard has been developed which delineates the need for the service and outlines the criteria which must be met by any person proposing such a service."

As indicated by these provisions, the growth of institutional health services in this State is governed by a three-step process. First, the board must develop standards for new institutional health services. *See* RSA 151-C:2, XXXVI, :5, :6 (1990 & Supp. 1992). Second, it must identify need; that is, instances in which existing services fail to meet the standards. *See* RSA 151-C:7, :8 (1990 & Supp. 1992). Third, it must attempt to fill the need. *See* RSA 151-C:8, :9, :12, :14 (1990 & Supp. 1992).

█   The petitioners argue that the board made an improper finding of need for the bed conversions. We agree. The DMHDS letters,

on which the board based its finding, make no mention of any board-developed standard identifying such a need. Instead, they simply state that the conversions are needed. A general assessment of need cannot give the board authority to grant a CON to fill it. The need *must* be identified in a standard developed pursuant to RSA 151-C:5 or :6. *See* RSA 151-C:4, II, :8, I, :9, I. The applicable standard here appears to be "Planning For Progress." *See* N.H. ADMIN. RULES, PART He-Hea 803. Our review of the record indicates that the board made its finding of need without reference to this manual or any other standard. Such a procedure renders RSA 151-C:5 and :6 largely superfluous and frustrates the statutory scheme of carefully developing standards for new institutional health services and granting CONs designed to implement them. *See* RSA 151-C:4. We therefore hold that the board erred as a matter of law when it granted the CONs.

■ Moreover, even if the board had made its finding of need pursuant to a standard, it failed to issue an RFA to fill the need. This was error. RSA 151-C:8, I, plainly states that "[i]f a standard . . . indicates a need for additional health services, the board shall issue a request for [CON] applications." This RFA must be published in a newspaper of statewide distribution and sent to all "affected persons," as defined in RSA 151-C:8, VI(b). The board issued no such notices.

■ We also note that when the board granted the respondents permission to submit CON applications, it appeared to limit its findings of need to the respondents' particular facilities. This, too, was improper. One of the goals of RSA chapter 151-C is to "promot[e] and stimulat[e] competition in the health care marketplace as a means of managing the increases in health care costs." RSA 151-C:1, III (1990). Thus, RSA 151-C:8, I, requires the board to publicize a finding of need and solicit CON applications, and RSA 151-C:8, III, states that "[a]ll applications received in response to a single request for applications shall be reviewed simultaneously and shall be considered in relationship to each other." A facility-specific need finding may eliminate the type of competitive CON review contemplated by the legislature.

*Reversed.*

All concurred.